# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISON

| | |
|---|---|
| **JENNIFER LEE** § § *Plaintiff*, § § **VS.** § § **CHRISTUS TRINITY MOTHER** § **FRANCES HEALTH SYSTEM,** § **TRINCARE, INC., and ROBERT** § **JEHLING** § § *Defendants*. § | **CIVIL ACTION NO.** **6:17-cv-00019** |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Jennifer Lee hereinafter called Plaintiff, complaining of and about Christus Trinity Mother Frances Health System, TrinCare, Inc., and Robert Jehling hereinafter called Defendants, and for cause of action shows unto the Court the following:

**I.**

**PARTIES AND SERVICE**

1.      Plaintiff, Jennifer Lee, is a citizen of the United States and the State of Texas and resides at 402 Shelly Drive, Whitehouse, Smith County, Texas.

2.      Defendant, Christus Trinity Mother Frances Health System. is a Texas corporation

doing business in the State of Texas. It may be served through its registered agent for service, Corporation Service Company DBA CSC – Lawyers Incorporated, 211 E. 7th Street, Suite 620, Austin, Texas 78701. Plaintiff requests service of process by any means authorized by law.

3. Defendant, TrinCare, Inc. is a Texas corporation doing business in the State of Texas. It may be served through its registered agent for service, Capitol Corporate Services, Incorporated, 206 E. 9th Street, Suite 1300, Austin, Texas 78701. Plaintiff requests service of process by any means authorized by law.

4. Defendant, Robert Jehling who is a citizen of Texas and resident of Texas, and may be served with process at 7954 Rasor Drive, Frisco, Denton County, Texas 75034-8212

## II.

## JURISDICTION

5. The action arises under 28 U.S.C. § 1343(a)(4) and 42 U.S.C. §§ 2000e et seq. as hereinafter more fully appears.

6. This Court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

## III.

## NATURE OF ACTION

7. This is an action under Title 42 U.S.C. §§ 2000e et. seq. as amended by the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex.

## IV.

## CONDITIONS PRECEDENT

8. All conditions precedent to jurisdiction have occurred or been complied with: a charge of discrimination was filed with the Equal Employment Opportunity Commission within three-hundred days of the acts complained of herein and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.

## V.

## FACTS

9. In August, 2015, Plaintiff applied and interviewed for a "Sales Representative" position with Defendants. On or about August 31, 2015 Plaintiff was offered the position in a written letter. The job paid $60,008 annually, bonuses, a $500 per month car allowance, and other benefits. Plaintiff was told that all she needed to do was to attend orientation on September 21, 2015, at which time Defendants would orient Plaintiff to the relevant employment policies "and other matters".

10. Prior to her application for employment with Defendants, Plaintiff was involved in a relationship with Defendant, Robert Jehling, who held a Vice President position. After Plaintiff was offered the job, but before orientation, she learned that the relationship might be a conflict, as managers were typically not allowed to date subordinates. Plaintiff confronted Jehling about this, and was told that restriction did not apply if we were in a "real" relationship, which obviously meant "sexual" to me, prior to my application. He

told Plaintiff that he personally had written the employee handbook, and that the restriction would not apply to us because it preexisted my employment start date. Before that time, the relationship had not been sexual.

11. Still prior to my orientation, Jehling informed Plaintiff that she had been denied the position by Todd Hancock, Chief Operating Officer and Senior Vice President (thus one of Jehling's superiors) for unknown reasons. It became abundantly clear, however, that in reality Jehling exercised his authority to deny Plaintiff employment so he could continue to see her.

12. Jehling told Plaintiff there was a similar paying position in the Marketing department that Plaintiff was equally qualified for, and that would be offered to Plaintiff if she wished. Plaintiff interviewed with Marketing supervisor, Holly LaBlanc, who told Plaintiff in no uncertain terms that she would "be perfect for" the Marketing position (LaBlanc even stated there were more positons and she would find a place for Plaintiff).

13. As Plaintiff was considering her options, she ended the relationship with Jehling in September, 2015. At that time, Plaintiff reported Jehling's actions (lying to her about dating restrictions and "real" relationships to encourage Plaintiff to have sex with him, etc.) to the Defendants' Human Resources Department, who initiated an investigation. Prior to the orientation date, Plaintiff also called Darin Szilagyi, (another one of LeBlanc's and Jehling's supervisors) to make it clear Plaintiff was not dating Jehling anymore and was still eligible for the Lab Sales position. However, Szilagyi did not return Plaintiff's calls.

14. Meanwhile, in response to the Human Resources investigation, Jehling denied that

he and Plaintiff ever had a relationship, but were instead "just friends". After giving overwhelming, clear evidence to Denise Abrams, the Human Resources investigator, in the form of text messages, Plaintiff was told that "this is not the first time [Jehling] had done this kind of thing before", and that Jehling would be "dealt with".

15. After fully cooperating with the Defendants' investigation, and ending the relationship with Jehling, the Defendants refused to respond to Plaintiff's inquiries about her employment offer/opportunities. It was as if the offers never existed. Plaintiff finally approached Denise Abrams to inquire why she was being ignored, and about the marketing and sales jobs. Plaintiff was informed that because Jehling is the Vice President to whom (at the time) the lab sales position reports, it wouldn't be "appropriate". Plaintiff was denied employment because Defendants refused to move or fire Jehling.

16. Darin Szilagyi who told Plaintiff he wanted Plaintiff "on his team" and who represented that he had several positions in mind if Plaintiff did not want the sales position, would not return Plaintiff's calls after she ended the relationship with Jehling.

## VI.

## SEXUAL HARASSMENT

17. Defendant, by and through Defendant's agents, sexually harassed Plaintiff, as described above, in violation of his rights under 42 U.S.C. Section 2000e (2)(a). Defendant knew or should have known of the harassment, yet failed to take prompt remedial action.

## VII.

## RESPONDEAT SUPERIOR AND RATIFICATION

18. Whenever in this complaint it is alleged that the Defendants did any act or thing, it is meant that the Defendants' officers, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of the Defendant or was done in the normal and routine course and scope of employment of Defendants' officers, agents, servants, employees, or representatives.

## VIII.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

19. Defendants' conduct described above was extreme and outrageous and proximately caused Plaintiff severe emotional distress. Plaintiff suffered damages for which Plaintiff herein sues.

## IX.

## NEGLIGENT HIRING, SUPERVISION AND RETENTION

20. Plaintiff alleges that the conduct of Defendant Corporations constituted negligent hiring, supervision and retention. Plaintiff alleges that Defendant Corporations did not properly screen, evaluate, investigate, or take any reasonable steps to determine whether Jehling was unfit, incompetent or a danger to third parties. Defendant Corporations knew or should have known that Jehling was unfit and could foresee that Jehling would come in contact with Plaintiff, creating a risk of danger to Plaintiff. Defendant Corporations

failure to exercise reasonable care in the hiring, supervision and retention of Robert Jehling was the proximate cause of damages to Plaintiff for which Plaintiff hereby sues.

## X.

## RETALIATION BY EXPRESS ENERGY SERVICES OPERATING, L.P.

21. Plaintiff alleges that Defendants' instituted a campaign of retaliation and ultimately denied and/or revoked Plaintiff's offer of employment. This retaliation was and is due to Plaintiff exercising her rights by opposing a discriminatory practice and making a charge. Plaintiff suffered damages for which Plaintiff herein sues.

## XI.

## DAMAGES

22. Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendants described hereinabove:

    a.    All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

    b.    Back pay from the date that Plaintiff was denied equal pay for equal work and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

    c.    All reasonable and necessary costs incurred in pursuit of this suit;

    d.    Emotional pain;

    e.    Expert fees as the Court deems appropriate;

    f.    Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

    g.    Inconvenience;

  h.  Prejudgment interest;

  i.  Loss of enjoyment of life;

  j.  Mental anguish in the past;

  k.  Mental anguish in the future;

  l.  Loss of earnings in the past;

  m.  Loss of benefits;

  n.  Humiliation;

  o.  Interruption of business;

  p.  Loss of time; and

  q.  Injury to reputation.

## XII.

## EXEMPLARY DAMAGES

23. Plaintiff would further show that the acts and omissions of Defendants complained of herein were committed with malice or reckless indifference to the protected rights of the Plaintiff. In order to punish said Defendant for engaging in unlawful business practices and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendants for exemplary damages.

## XIII.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Jennifer Lee, respectfully prays that the Defendant be cited to appear and answer herein, and that upon a

final hearing of the cause, judgment be entered for the Plaintiff against Defendant, jointly and severally, for damages in an amount within the jurisdictional limits of the Court; exemplary damages, as addressed to each Defendant, together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully Submitted,

/s/ DG
**DARREN GRANT** *Lead Attorney*
State Bar No. 24012723
**MATTHEW B. FLANERY**
State Bar No. 24012632
**GRANT & FLANERY, P.C.**
216 W. Erwin, Suite 200
Tyler, Texas 75702
(903) 596-8080   (Telephone)
(903) 596-8086   (Facsimile)
Darren@GFTexas.com

**ATTORNEYS FOR PLAINTIFF**